UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | Bankr. No. 08-82824 |
| HARRY E. VARGAS, | ) | |
| | ) | |
| Debtor. | ) | |
| | ) | |
| HARRY E. VARGAS, | ) | |
| | ) | |
| Debtor-Appellant, | ) | Adv. No. 08-8135 |
| | ) | |
| v. | ) | |
| | ) | |
| EDUCATIONAL CREDIT | ) | |
| MANAGEMENT CORPORATION, | ) | Civil No. 10-4022 |
| | ) | |
| Appellee. | ) | |

# ORDER

This matter is now before the Court on Appellant, Educational Credit Management Corporation's ("ECMC"), Appeal from the Order of the Bankruptcy Court granting the discharge of Appellee, Harry E. Vargas' ("Vargas"), student loan debt. For the reasons stated herein, the decision of the Bankruptcy Court is REVERSED.

**Procedural Background**

On October 17, 2008, Vargas filed for Chapter 7 relief, disclosing a monthly wage of $1,300.00, a net monthly income of $1,063.21, and monthly expenses of $1,074.00. He received a general discharge on January 21, 2009. An adversary complaint was filed on November 14, 2008, seeking to discharge almost $45,000.00 in student loan debt pursuant to 11 U.S.C. § 523(a)(8). On December 10, 2009, the Bankruptcy Court conducted a trial on the adversary complaint. The Bankruptcy Court issued an Order and Opinion dated

January 12, 2010, finding that the student loan debt was dischargeable, and this appeal followed.

**Jurisdiction and Standard of Review**

This Court has jurisdiction to review the decision of the Bankruptcy Judge pursuant to 28 U.S.C. § 158(a). District courts are to apply a dual standard of review when considering a bankruptcy appeal. The findings of fact of the Bankruptcy Judge are reviewed for clear error, while the conclusions of law are reviewed *de novo*. In re Midway Airlines, 383 F.3d 663, 668 (7th Cir. 2003); In re Smith, 286 F.3d 461, 465 (7th Cir. 2002); In re Yonikus, 996 F.2d 866, 868 (7th Cir. 1993); In re Roberson, 999 F.2d 1132, 1137 (7th Cir. 1993); see also, Bankruptcy Rule 8013 (West 1995). In doing so, the Court must give deference to the Bankruptcy Court's findings of fact and to the factual inferences drawn from those facts as long as those findings are supported by the evidence of record. In re O'Hearn, 339 F.3d 559, 564-65 (7th Cir. 2003).

**Discussion**

Vargas went back to school later in life with the hopes of obtaining a better paying job. After several years of attending a community college, he obtained a Bachelor of Arts degree from Western Illinois University in 1996, with a major in journalism and a minor in communications. The Bankruptcy Court made the following factual findings: (1) Vargas had made regular payments on his student loans for two years following his graduation until his income decreased and he became unable to make the payments; (2) Vargas sought and received five forbearances from his lender;

(3) Vargas entered into a loan consolidation agreement with his lender in 2001; (4) Vargas made no payments on his loan following the consolidation.[1]

The standard for determining the dischargeability of a student loan debt is undisputed. Educational loans are presumptively nondischargeable, and debtors may obtain a discharge of student loan debt only if the obligation imposes an "undue hardship" on the debtor. 11 U.S.C. §§ 523(8) and 1328. As the phrase "undue hardship" is not defined by the statute, the Seventh Circuit has adopted the three-part test first set forth in <u>Brunner v. New York State Higher Educ. Serv. Corp.</u>, 831 F.2d 395, 396 (2nd Cir. 1987), to determine whether the debtor qualifies for the exception:

> (1) the debtor cannot maintain, based upon current income and expenses, a minimal standard of living for himself and his dependents if forced to repay the loans; and (2) additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) the debtor has made good-faith efforts to repay the loans.

<u>In re O'Hearn</u>, 339 F.3d 559, 563 (7th Cir. 2003), *citing* <u>In re Roberson</u>, 999 F.2d at 1135. "If the debtor fails to establish any of the elements, the test has not been met and the court need not continue with the inquiry." <u>In re Goulet</u>, 284 F.3d 773, 777 (7th Cir. 2002), *citing* <u>In re Roberson</u>, 999 F.2d at 1135.

The first prong of this test examines "the debtor's current financial condition to see if payment of the loans would cause his standard of living to fall below that minimally necessary." <u>Id.</u> At the time of the hearing, Vargas had no dependents, was in good health, owned no real estate, and had a retirement account with a $2,000.00

---

[1] The Bankruptcy Court made these findings after concluding that Vargas' testimony was credible and unrefuted.

- 3 -

balance. He took home a net monthly income of $1,063.21 from his full-time job at the Salvation Army.

The Bankruptcy Court concluded that Vargas' lifestyle was modest at best. He lives in a one bedroom apartment for $400.00 per month rent. He drives a 1992 Dodge Dynasty valued at $650.00. In an average month, Vargas testified that he spends $127.91 for cable TV and internet service, $80.00 for utilities, $57.00 for his cell phone, $125.00 for food, $20.00 for clothing, $25.00 for health expenses, $20.00 for transportation, $53.00 for car insurance, $10.00 for laundry, $40.00 for tobacco, and $50.00 for recreation, for a total of $1,010.00 in expenses.

The Bankruptcy Court found that the expenses for food, clothing, and transportation were both unrealistic and below normal. The Bankruptcy Court noted that a food allowance of $200.00 was standard and that transportation expenses of $20.00 a month for a 17-year-old vehicle were not realistic. While expanded cable and internet access were not a necessity, the Bankruptcy Court found that given Vargas' lack of hobbies and that watching TV was his main activity outside of work, it was a reasonable part of his minimal standard of living. The $50.00 per month that Vargas spent buying lottery tickets for recreation was also found to be a small and reasonable expense, with the Bankruptcy Court commenting that it was not in the business of judging the acceptability of the many alternatives available for recreation. Although based on Vargas' "overly optimistic" projected expenses, it would appear that he would have $53.00 per month in disposable income, the Bankruptcy Court found that if his projections were increased to more realistic figures, Vargas would have no funds available to pay his student loan debt. Thus, the Bankruptcy Court concluded that

Vargas did not have the ability to pay the loan while maintaining his incredibly minimal standard of living.

ECMC challenges that Vargas failed to satisfy the first prong of the test because he had made no effort to maximize his income. In particular, ECMC suggests that he could obtain an additional part-time job or a job with higher income potential. This argument, however, is misplaced, as the first prong addresses the debtor's current financial situation and such an argument is more appropriately directed to the third prong of the Brunner test, which considers whether the debtor has made good faith efforts to repay his debt. *See* In re Goulet, 284 F.3d at 779; In re Roberson, 999 F.2d at 1136.

ECMC also maintains that Vargas cannot satisfy the first prong because he spends $100.00 a month on unnecessary expenses such as cigarettes and lottery tickets. Necessary expenses have been held to include a debtor's need for basic necessities, such as food, shelter, clothing, and medical treatment. In re Larson, 426 BR 782, 789 (Bankr.N.D.Ill. 2010), *citing* In re Clark, 341 BR 238, 249 (Bankr.N.D.Ill. 2006). "A debtor is also 'entitled to allocate a small amount of monthly income to discretionary or recreational purposes, which allocation, by definition, is not for a necessity.'" Id. Although a debtor is expected to live within the constraints of a frugal budget, he is not expected to live in abject poverty. Id.

Here, Vargas allocates approximately $90.00 per month to smoking and the purchase of lottery tickets as recreation and an additional $44.00 per month for expanded cable. Even under the minimal standard of living test, "[p]eople must have the ability to pay for some small diversion or source of recreation, even if it is just

watching television or keeping a pet." Id., *citing* In re McLaney, 375 BR 666, 674 (M.D.Ala. 2007).

Vargas makes only $5,000.00 more a year than the $10,830.00 per year that sets the federal poverty guideline for a family of one. The $537.00 that he spends each month on rent, utilities, and phone is only slightly above the $526.00 bankruptcy allowable living expenses established by the IRS.[2] The $375.00 that Vargas spends on cable, food, clothing, laundry, tobacco, and recreation is well below the $526.00 per month allowable expenses for food, clothing, and other items.[3] His out of pocket expense of $25.00 per month for health care is less than the $60.00 allowance, and the $73.00 budgeted for transportation and car insurance is less than half the $210.00 allowance for the operating costs for one car in the Midwest Region.[4] *See* In re O'Hearn, 339 F.3d at 565 (considering how the debtor's income and expense compared to IRS allowances).

Vargas' expenses demonstrate a budget that is frugal overall and which leaves no room for unexpected expenses, such as illnesses, accidents, car problems, etc. The Court agrees with the findings in Larson and In re Zook, 2009 WL 512436, at *9 (Bankr.D.D.C. Feb. 27, 2009), to the effect that:

---

[2] *See* www.justice.gov/ust/eo/bapcpa/20101101/bci_data/housing_charts.

[3] *See* www.justice.gov.ust/eo/bapcpa/20101101/bci_data/national_expense_standards.htm.

[4] *See* www.justice.gov.ust/eo/bapcpa/20101101/bci_data/national_oop_healthcare.htm and www.justice.gov.ust/eo/bapcpa/20101101/bci_data/IRS_Trans_Exp_Stds_MW.htm.

> A debtor whose income is insufficient to meet a minimal standard of living, taking into account the level of expenditures necessary for that purpose, ought not be denied a discharge of student loan debts based on the creditor's finding some item of expenditure that could be deemed a non-necessity. The Brunner test ought not be turned in that fashion into a game of "gotcha" based on viewing certain expenditures in isolation, wearing blinders that disregard the debtor's needs in a global fashion.

Accordingly, the Court cannot find that the Bankruptcy Court's determination that Vargas satisfied the first prong of the test was in error.

The second prong, addressing the existence of circumstances indicating that the debtor's financial situation is likely to continue for a significant portion of the repayment period, requires a "certainty of hopelessness" and not simply a present inability to satisfy the debt. In re O'Hearn, 339 F.3d at 564. This is "a tough standard and one that can generally . . . be met [only] by the truly disabled or debtors whose repaymente periods have already run . . . ." In re Clark, 341 BR at 252.

Here, the Bankruptcy Court noted that Vargas was a 57-year-old, with no significant retirement savings or pension, no demonstrated special skills or experience making it likely that he could obtain a better paying job, and a bachelor's degree in journalism that is of no use to him. From the fact that he had been unable to pay his loans for a "significant portion of the repayment period," the Bankruptcy Court then concluded that the situation "is likely to persist for its remainder."

Testimony at trial revealed that Vargas had not looked for any better paying jobs because he liked his work and co-workers at the Salvation Army. However, he had previously worked as a CNA and admitted knowing that he could make better wages if her was to become recertified in that capacity. This is some evidence of special skills/

experience making it likely that he could obtain a better job.  Although Vargas stated that he had not done any investigation or taken any steps to determine the process for becoming recertified, he had heard from friends that it would involve taking classes at a junior college.

In In re O'Hearn, the Seventh Circuit faulted the bankruptcy court for failing to explore fully whether taking jobs in other fields might put the debtor in better financial standing and crediting the debtor's choice to work in the public health field.  339 F.3d at 566.  "[I]t is not uncommon for individuals to take jobs not to their liking in order to pay off their student loans, or for that matter to meet all sorts of other financial obligations."  Id.  Despite the debtor's selection of a position that he found satisfying and socially useful, the Court of Appeals noted that "Congress has not provided that such considerations ought to be weighed in determining the discharge of student loans."  Id.  Furthermore, while it was proper to consider the age of the debtor and the impact this would have on the likelihood of his ability to find different employment, the Seventh Circuit commented that a debtor's lack of retirement funds at the time of the trial had been routinely discounted in the absence of some indication that the debtor had made efforts to pay off his student loans long before retirement that were unsuccessful as a result of his accountant's intervening embezzlement.  Id.

Similarly, in In re Goulet, the Seventh Circuit concluded that a 55-year-old debtor who: (1) did not suffer from any psychiatric problems, lack of usable job skills, or severely limited education; (2) failed to have the capacity to make a payment on his loans throughout the last decade; (3) suffered from alcoholism; and (4) had a prior felony conviction had not demonstrated circumstances rising to the level of "additional,

exceptional circumstances" necessary to satisfy the second prong of the test.  284 F.3d at 778-79.  The showing of "insurmountability" rejected in that case is more persuasive than the showing made by Vargas here.

To demonstrate that a debtor's state of affairs is likely to persist, "a debtor must precisely identify [his] problems and explain how [his] condition will impair [his] ability to work in the future."  In re Nelson, 404 BR 892, 895-96 (Bankr.E.D.Wis. 2009), *citing* In re Tirch, 409 F.3d 677, 681 (6th Cir. 2005).  Vargas' only identified problems are his age and his lack of desire to obtain other employment.  Under the precedent cited and the factual record at trial indicating the possibility of special skills or experience that could have enabled Vargas to obtain a better paying job, the Court cannot find that the Bankruptcy Court's determination that Vargas satisfied the second prong of the test was reasonable.  However, even assuming that this issue was close enough to find in favor of Vargas, he would nevertheless not be entitled to discharge.

The third prong of the test addresses whether the debtor has made good faith efforts to repay the loans.  This involves an inquiry into "whether the debtor was negligent or irresponsible in conducting his financial affairs such that the debtor's misfortune is self-imposed."  In re Larson, 426 BR at 795, *citing* In re Roberson, 999 F.2d at 1136.  While this does not require that any certain percentage of the debt have been repaid or even that a debtor have made a payment if he never had the resources to do so, it does require the debtor to "take advantage of one of the repayment plans available to [him] if and when [he] is able to do so."  In re Larson, 426 B.R. at 795, *citing* In re Clark, 341 BR at 255.

Vargas testified that while he initially made payments on the loans and sought a few forbearances early on, he had neither made a payment nor sought a forbearance during the more than eight years since consolidating the loans in 2001, and it is this consolidated loan that he seeks to discharge. He further stated that since consolidating his loans, he never even made an attempt to find out what his monthly payment would be or work out a reasonable payment schedule. Although Vargas had been advised of several alternative payment programs, he never did anything to find out about them or apply for participation in such a program. Rather, it appears that he simply sat back and let his consolidated loan lapse into default.

In re Goulet further holds that a good faith effort to repay educational loans can be measured by "efforts to obtain employment, maximize income, and minimize expenses." 284 F.3d at 779, *citing* Roberson, 999 F.2d at 1136. While there was some evidence that Vargas had made some efforts to minimize his expenses, there was no evidence of any effort to maximize his income by seeking a higher paying job or that he attempted to apply any available income to his student loan debt. Finally, Vargas did not explore, much less take advantage of, one of the alternative repayment plans available to him even when able to do so. *See* In re Larson, 426 BR at 795, *citing* In re Clark, 341 BR at 255 (concluding that to meet the good faith requirement, a debtor must take advantage of an available repayment plan if and when he/she is able to do so.) Even if no payment was required under the plan and the amount due would have essentially remained unchanged, signing up for one of the repayment alternatives would have demonstrated a continued acknowledgment of the debt and some intent to repay,

as opposed to the deliberate obliviousness demonstrated by Vargas following his consolidation in 2001.

Accordingly, the Court must conclude that Vargas failed to satisfy the third prong of the Brunner test as well. He has therefore failed to demonstrate that repaying his loans would be an "undue hardship" and the Bankruptcy Court erred in determining that he was entitled to discharge his student loan obligations.

ECMC has demonstrated that the Bankruptcy Court erred in holding that Vargas met the standard for discharging of his student loan debt and its argument with respect to the application of the law to the facts in this case has demonstrated reversible error. Accordingly, ECMC is entitled to the relief requested.

## Conclusion

For the reasons stated herein, the Order of the Bankruptcy Court is REVERSED. This matter is now TERMINATED.

ENTERED this 22nd day of December, 2010.

                                                s/ Michael M. Mihm
                                                Michael M. Mihm
                                                United States District Judge